## Kelly's Estate.

*Will—Construction—Life estate—Right to income accrued but unused by life-tenant.*

A gift to a daughter in trust "to apply the net income accruing therefrom to her maintenance and support during her natural life" is a gift of all the income accruing during her lifetime, and any part of it not used belongs to the daughter's estate and not to the remainderman.

Exceptions to adjudication.  O. C. Phila. Co., Jan. T., 1909, No. 571.

HENDERSON, J., Auditing Judge.—By my adjudication heretofore filed on Feb. 4, 1926, there was suspended unexpended income amounting to $4519.78, pending the appointment of an administrator of the estate of Louisa Kelly, the deceased life-tenant, to present a claim for such accumulated income. . . .

The testatrix died on Jan. 31, 1908, and by her will directed as follows:

"I give devise and bequeath the sum of Twenty-five thousand dollars ($25,000) to the Fidelity Trust Company of Philadelphia to be vested in them in trust for my daughter Louisa Kelly to collect all the income arising therefrom and after deducting their charges to apply the net income accruing therefrom to her maintenance and support during her natural life. Should she die before her brother W. F. Kelly this fund made in trust for her shall go absolutely to her brother W. F. Kelly or in case of his death before her to his wife or children if he should leave any."

The beneficiary of this fund died on Jan. 12, 1926; she was the daughter of the decedent, and at the time of the mother's death was insane and so continued to the time of her death.

William F. Kelly, the brother, predeceased Louisa Kelly, leaving no issue but a widow, Edith Schorn Kelly, who claims this fund as the executrix of the deceased brother who was the residuary legatee. The personal representative of Louisa Kelly is the other claimant.

Stripped of its verbiage, the gift is vested in the trustee "in trust for my daughter . . . to collect all the income . . . and . . . to apply the net income . . . to her maintenance and support. . . ."

Without more, this language would be sufficient to vest principal as well as interest in the daughter. The question arises, how far the subsequent gift over cuts this down? If the brother survived the sister, "this fund made in trust for her" was given to him, and if he did not survive, then it was given to his wife if he left any.

Kelly's Estate.

It is contended that this excess income was an illegal accumulation which, under the Act of 1853, fell into the residue.

The record of the Pennsylvania Hospital which was placed in evidence shows this life-tenant to have been an inmate since 1888 and hopelessly insane. After providing for her care and maintenance, there was, over a period of seventeen years, accumulated the sum of $4509.11, or an average of about $250 per annum. It is argued that the phrase "apply the net income . . . to her maintenance and support" necessarily implies a discretion in the trustee to accumulate, which is forbidden by the Act of 1853.

I cannot follow this reasoning. The balance which has accumulated is merely an administrative balance, one justified by prudent management, especially provident in these times of mounting costs.

The language above quoted from the will is amply sufficient to vest the entire income in the daughter, the expenditures for her maintenance to be directed by the trustee, so that the title to what is not used is in the daughter and must be awarded to her personal representative.

Howell's Estate, 180 Pa. 515, has been quoted contra. But the facts do not bear out any such application. Therein the will gave an annuity of $2500 and a fund was set aside to assure it. The surplus income undoubtedly belonged to the residuary legatees and was so awarded.

*Townsend, Elliott & Munson*, for exceptions.

*William A. Wiedersheim, 2nd*, contra.

LAMORELLE, P. J., June 27, 1928.—Anna Maria Kelly, who died in 1908, survived by two children, a daughter, Louisa Kelly, and a son, W. F. Kelly, disposed of an estate aggregating some $65,000 by creating a trust for the daughter, who was *non compos*, and giving the rest of the estate (less a legacy of $200) to the son absolutely. The son died in the lifetime of the daughter; the latter is now dead, and the son's widow has received the principal of the trust. She now claims the income on hand, which income is also claimed by the administrator of the daughter's estate. The Auditing Judge has awarded this income to such administrator, and the exceptions question this ruling.

Had Anna Maria Kelly intended that the daughter should have no more than the sum actually expended on her behalf, she could have directed that out of income or of principal of her estate a sum or sums sufficient for the purpose should be used, or she could have set aside a sum with the proviso that the executor should use so much as in its discretion would be necessary. She did neither. She gave the sum of $25,000 to a trust company "to be vested in them" in trust for the daughter, with directions to apply the net income accruing therefrom to her maintenance and support for life. In event that she died before her brother "this fund made in trust for her" was to go to the brother; if she outlived him, upon her death, to his wife or children. This "fund" evidently meant the sum so given, to wit, $25,000. It could not embrace income, for all of the income was that of the *cestui que trust*. No discretion was given the trustee; the gift of income was as broad as that of principal: See discussion by Thompson, J., in Carlisle's Estate, 30 Dist. R. 737. The fact that all was not used is beside the real question at issue. No intention is anywhere shown in the will to pass any unused income into the residuary estate. All net income was to be used for the daughter's benefit; any not actually used formed part of her estate and at her death intestate went to her next of kin through the course of administration. Had testatrix provided that only so much of the income should be used as in the discretion of

the trustee was deemed necessary, then there would be force in exceptants' position; but that is not this case.

As we are of opinion that the Auditing Judge properly interpreted this clause of the will, no further elaboration is required.

All exceptions are dismissed and the adjudication is confirmed absolutely.

GEST and VAN DUSEN, JJ., did not sit.